UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD VINSON,<br><br>   Plaintiff,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION,<br><br>   Defendant. | Case No. 13-cv-00699-JST<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**<br><br>Re: ECF Nos. 41, 42, 45, 48, 49 |

  Before the Court is Defendant California Department of Corrections and Rehabilitation's ("CDCR") Motion for Judgment on the Pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will GRANT the motion, with leave to Plaintiff to amend his complaint.

**I. BACKGROUND**

  **A. Factual Allegations**[1]

  CDCR employed Plaintiff as a correctional officer at San Quentin State Prison and at Chino State Prison. Compl. at 2-3. During the 2009 to 2010 hiring cycle, Plaintiff sought a promotion to correctional sergeant. Id. at 1. Plaintiff ranked third of all candidates who took a written test to qualify for the promotion, id. at 1-2, and on his most recent performance review, ranked "Outstanding" in all categories, ECF No. 4-2 ("Binder")[2] at 3, but he was not promoted,

---

[1] The Court accepts the allegations in the Complaint and supporting documents as true for the purpose of resolving this motion. See Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

[2] Although Plaintiff calls this collection of documents "Evidence and Document Binder," the documents are part of his complaint.

1  Compl. at 2. His test rank was higher than that of anyone whom CDCR eventually selected and
2  promoted to correctional sergeant in that hiring cycle. Id.
3        In January 2011, Plaintiff retired from his position at CDCR. Binder, ECF No. 4 at 14.
4  Because a Marin County Superior Court issued a restraining order against Plaintiff ("TRO
5  proceeding"), which prevented him from carrying a firearm, he was unable to continue working as
6  a correctional officer. Id. at 14-15, 19, 40. According to Plaintiff, two CDCR employees obtained
7  the restraining order by giving false testimony to the court in the TRO proceeding. Id. Later,
8  Plaintiff sought reinstatement to his position as a correctional officer and promotion to
9  correctional sergeant, but his application was denied. Binder, ECF No. 4-1 at 48-50. In a
10 September 27, 2011 letter, CDCR explained that Plaintiff had not participated in the interview
11 process for the specified position, and that, per legislative mandate, CDCR and San Quentin State
12 Prison were reducing staff. Binder, ECF No. 4-3 at 2.
13       In early December 2011, Plaintiff filed a discrimination complaint with CDCR's Equal
14 Employment Opportunity Coordinator. Binder, ECF No. 4 at 19-31; ECF No. 4-1 at 41-47. On
15 December 9, 2011, Plaintiff then filed an appeal (presumably of the Coordinator's decision
16 resolving the complaint) with the California State Personnel Board ("SPB"). Binder, ECF No. 4 at
17 5. In a December 27, 2011 letter, the SPB acknowledged receipt of Plaintiff's letter requesting to
18 file a discrimination complaint. Id. The SPB stated that it could not accept Plaintiff's complaint
19 for review because Plaintiff did not undertake the departmental review process, a prerequisite to
20 filing a claim with the SPB. Id. In March and April 2012, Plaintiff requested reconsideration of
21 and sought to appeal the SPB's denial of his initial complaint. Id. at 8, 14-16. The SPB again
22 denied his requests, citing lack of jurisdiction. Id. at 8, 17. SPB instructed Plaintiff to file a
23 complaint with the Department of Fair Employment and Housing ("DFEH") or the Equal
24 Employment Opportunity Commission ("EEOC"). Binder, ECF No. 4 at 17.
25       Plaintiff then filed a complaint with the EEOC, apparently alleging only an Age
26 Discrimination in Employment Act ("ADEA") claim. Binder, ECF No. 4 at 3-4. The EEOC
27 closed his case on November 20, 2012, and issued him a right-to-sue letter. Id. Only the box
28 related to an ADEA charge is checked on that letter; no boxes associated with Title VII of the

Civil Rights Act of 1964 ("Title VII") are checked, which suggests that Plaintiff did not file a Title VII charge with the EEOC. Id. at 4.

### B.  Procedural History

Plaintiff filed this complaint on February 19, 2013. Plaintiff alleges that CDCR violated the Fourteenth Amendment to the United States Constitution, Title VII, and the ADEA in its interactions with him. Compl. at 4. Plaintiff also complains about the TRO proceeding, although it is not clear from his complaint what claims for legal relief, if any, arise from that proceeding, or how the CDCR acted or failed to act in that proceeding in a way that would make it liable to Plaintiff. See id.

Defendants answered the complaint on October 24, 2013. On May 29, 2104, they filed this Motion for Judgment on the Pleadings.

### C.  Requests for Judicial Notice

Under Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of facts that are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Particular categories of documents that are generally subject to judicial notice under this standard are matters in the public record, Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), including case law, statutes, and official reports issued by public agencies. Matters the Court judicially notices must not only satisfy Rule 201, but – like all other forms of evidence – must also be relevant to the matter at issue. See Fed. R. Evid. 401.

#### 1.  Plaintiff's requests

Plaintiff asks the Court to take judicial notice of several documents and certain items of information. ECF No. 45. The Court will partially grant Plaintiff's requests. First, Plaintiff does not separately identify, but appears to request judicial notice of, the recent recession. Id. at 1, 3. Plaintiff also requests that the Court take judicial notice of: (1) the California State Auditor's Letter Report 2009-002.1b; (2) an excerpt relating to CDCR of the California Legislative Analyst's Office 2008 Budget Analysis; (3) three sections of the United States Code; (4) the case of Douglas v. California Department of Youth Authority, 271 F.3d 812 (9th Cir. 2001); (5) an

1    article printed in the Los Angeles Times; and (6) an article printed at ContraCostaTimes.com. Id.
2    at 10.
3        The Court will take judicial notice of the Auditor's report, the Legislative Analyst's Office
4    excerpt, the sections of the U.S. Code, and Douglas.  All of these are matters of public record and
5    therefore are capable of ready and accurate determination and are not subject to reasonable
6    dispute.  Likewise, the Court will take judicial notice that the country recently experienced a
7    severe recession, as that matter is not subject to reasonable dispute and its existence is capable of
8    ready determination by resort to accurate sources.  Plaintiff's request for judicial notice as to these
9    items is granted.
10       The Court will sustain Defendant's objections to the articles from the Los Angeles Times
11   and ContraCostaTimes.com, ECF No. 48, because these articles are not an appropriate subject of
12   judicial notice.  "Although a court may take judicial notice of a newspaper article, petitioner must
13   meet the burden of demonstrating that the facts of the article are either '(1) generally known
14   within the territorial jurisdiction of the trial court or (2) capable of accurate and ready
15   determination by resort to sources whose accuracy cannot reasonably be questioned' as required
16   under Rule 201(b) of the Federal Rules of Evidence."  In re Am. Apparel, Inc. S'holder Litig., 855
17   F. Supp. 2d 1043, 1063 (C.D. Cal. 2012).  Plaintiff has not met his burden of demonstrating that
18   these articles satisfy either of these tests.  Moreover, even if the articles did satisfy Rule 201, the
19   Court would still deny judicial notice because the articles are irrelevant – they discuss a policy of
20   the DFEH, but Plaintiff has not alleged that he ever filed a complaint with DFEH.  Plaintiff's
21   request for judicial notice of the Los Angeles Times and ContraCostaTimes.com articles is denied.

22       **2.   CDCR's requests**

23       CDCR also requests the Court to take judicial notice of several documents.  ECF Nos. 42,
24   49.  These are: (1) a certificate of no records from the DFEH for Harold Vinson, ECF No. 42 &
25   Ex. A; (2) a certificate from the EEOC stating that the records for Harold Vinson had been
26   destroyed, id. & Ex. B; (3) CDCR's copies of official records it received from the EEOC related to
27   Plaintiff's charge, id. & Ex. C; (4) court records from the TRO proceeding, id.; and (5) a
28   certificate of no records issued by the SPB, ECF No. 49 & Ex. A.  These documents are all matters

United States District Court
Northern District of California

1    of public record, and thus are properly the subject of judicial notice.  See Lee, 250 F.3d at 689.

2    The Court hereby GRANTS CDCR's requests for judicial notice.[3]

### D.   Jurisdiction

This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, because Plaintiff's ADEA and Title VII claims arise under federal law.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6) . . . ." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation omitted).  To evaluate a Rule 12(b)(6) motion to dismiss, the court accepts the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In sum, a "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." Fajardo v. Cnty. of L.A., 179 F.3d 698, 699 (9th Cir. 1999). "Finally, although Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend, and to simply grant dismissal of the action instead of entry of judgment." Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted).  When dismissing a complaint, the court must grant leave to amend unless amendment clearly cannot cure the complaint's deficiencies.  Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

## III.   ANALYSIS

### A.   ADEA Claim

Plaintiff's ADEA claim fails for two different reasons:  it is barred by Eleventh

---

[3] CDCR also objects to and moves to strike the "Exhibits" Plaintiff attached to his Opposition to the instant Motion to Dismiss.  ECF No. 48 at 1 n.1; see ECF No. 46.  The Court hereby GRANTS the Motion to Strike, ECF No. 48, as the Exhibits are not materials that are properly attached to an opposition brief.  See Civ. L.R. 7-3.

United States District Court
Northern District of California

Amendment, and Plaintiff has failed to allege facts demonstrating that CDCR discriminated against him in violation of the ADEA.

The ADEA makes it unlawful for an employer, including a state agency like CDCR, to discriminate against any individual on the basis of age in hiring or discharge. 29 U.S.C. § 621 *et seq.* CDCR argues that Plaintiff's ADEA claim is barred by the Eleventh Amendment to the United States Constitution. That amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

CDCR correctly notes that, as a general matter, the ADEA did not abrogate the protections of the Eleventh Amendment. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) (holding that Congress's enactment of the ADEA did not abrogate states' Eleventh Amendment immunity).

Plaintiff argues, however, that CDCR waived its Eleventh Amendment immunity. A state agency can waive its immunity by accepting federal funds that are conditioned on such a waiver. See Douglas, 271 F.3d 819-20 (holding that California's acceptance of Rehabilitation Act funds waived its Eleventh Amendment immunity because the Rehabilitation Act clearly expressed Congress' intent to condition the receipt of funds under the Act on such a waiver). Plaintiff argues that CDCR is subject to such a waiver here, because it accepted funds under the Economic Stimulus Act of 2008 for renovating San Quentin State Prison. ECF No. 45 at 3-4.

This argument is not persuasive, because – unlike the Rehabilitation Act at issue in Douglas – the Economic Stimulus Act did not condition the receipt of funds under the Act on an Eleventh Amendment waiver. Compare 42 U.S.C. § 503, with Pub. L. No. 110-185, 122 Stat. 613 (codified in scattered sections of Title 26, U.S.C.).

Plaintiff's ADEA claim has an additional, substantive defect. Even if he had adequately pleaded a waiver of CDCR's Eleventh Amendment immunity, his claim would still fail on the

6

merits, because he alleges no facts that would tend to show CDCR engaged in discriminatory conduct based on his age.  See Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) ("a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled").

Plaintiff's ADEA claim is therefore DISMISSED.  The Court will grant Plaintiff leave to amend his ADEA claim as set forth below.

### B. Title VII Claim

#### 1. Administrative exhaustion

Defendant argues that Plaintiff has not complied with the administrative exhaustion requirements for a Title VII claim, and that as a result, the Court lacks jurisdiction over that claim.  The Court agrees.

Title VII prohibits "unlawful employment practices" by any person.  42 U.S.C. § 2000e *et seq.*  Unlawful employment practices include engaging in discrimination in the hiring or discharge of employees or applicants for employment on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.

To bring a Title VII claim in federal district court, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC within a relatively short statute of limitations.  42 U.S.C. § 2000e-5(e)(1).  Filing a timely EEOC complaint is not a jurisdictional prerequisite to a Title VII claim; it is merely a statutory requirement subject to waiver, estoppel, and equitable tolling.  Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).  Substantial compliance with the exhaustion requirement, however, *is* a jurisdictional prerequisite.  Id.  A plaintiff has substantially complied with the exhaustion requirement if he or she raises issues before the district court "that are 'like or reasonably related' to the allegations in the EEOC charge, or that fall within the 'EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"  Id.  Thus, "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the

allegations contained in the EEOC charge.'" Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990) (quoting Green v. L.A. Cnty. Superintendent of Schs., 883 F.2d 1472, 1475-76 (9th Cir. 1989)). Furthermore, "the EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." Id. at 1458 (citation omitted). Where a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, however, the district court does not have subject matter jurisdiction. Sommatino, 255 F.3d at 708.

Plaintiff argues that he exhausted his administrative remedies by filing a complaint with the SPB. But the SPB lacked jurisdiction over his complaint and was not the "appropriate administrative authority." Filing a complaint with the SPB was not a substitute for filing one with the EEOC. In fact, as CDCR points out, the SPB directed Plaintiff to file his claim with the EEOC, which Plaintiff only did with respect to his ADEA claim.

Plaintiff's ADEA claim, or the documents he submitted to the EEOC to initiate that claim, might possibly be "reasonably related" to his Title VII claim, but there is no way to know this from either the complaint or the materials submitted in connection with this motion. The rule is that the filing of a complaint with regard to one category of Title VII discrimination (e.g., age discrimination) does not demonstrate that a plaintiff substantially complied with § 2000e-5 as to a claim of another category of discrimination (e.g., racial discrimination). See Shah v. Mt. Zion Hosp. & Med. Ctr., 642 F.2d 268, 271-72 (9th Cir. 1981) (holding that a district court properly dismissed for failure to exhaust plaintiff's Title VII claims of discrimination based on his race, color, and religion, where plaintiff only filed charges based on sex and national origin discrimination with the EEOC). In the absence of additional information, the Court must therefore conclude that Plaintiff has failed to allege substantial compliance with the administrative exhaustion requirement.

Accordingly, CDCR's motion for judgment on the pleadings is GRANTED with respect to Plaintiff's Title VII claim. The Court will grant Plaintiff leave to amend his complaint as set forth below.

**C.     Claims Based on the TRO Proceeding**

Defendant raises two additional arguments relating to that portion of the Plaintiff's complaint concerning his TRO proceeding: (1) the Rooker-Feldman doctrine bars the Court from hearing those claims; and (2) the Noerr-Pennington doctrine bars them. ECF No. 41.[4]

### 1. Rooker-Feldman

"The Rooker–Feldman doctrine has evolved from the two Supreme Court cases from which its name is derived." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004); see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983). The Rooker-Feldman doctrine bars federal court actions that are "de facto appeals" of state-court judgments. Id. A de facto appeal occurs where the claims raised in the federal action are "inextricably intertwined" with the state-court decision such that adjudication of the federal claims would undercut the state ruling. Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (2008). CDCR argues that Plaintiff's complaint is effectively an attempt to appeal the state court's decision in the TRO proceeding.

As Plaintiff correctly notes, however, a party can bring an "independent claim, albeit one that denies a legal conclusion that a state court has reached" in federal court, without triggering the Rooker-Feldman bar. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). In addition, a federal court can review a state-court judgment that a federal plaintiff alleges was procured by a wrongful act by an adverse party. For example, in Reusser, plaintiffs alleged that a state-court judgment they contested in federal court was procured by fraud. 525 F.3d at 858-59.

But Plaintiff's claims do not fit within any recognized exception to Rooker-Feldman. Plaintiff's claim, in essence, is that witnesses in the TRO proceeding gave untruthful testimony. In the TRO proceeding, Plaintiff explicitly informed the court that he believed the witnesses' testimony to the court was false or inconsistent. Binder, ECF No. 4-4 at 5-6, 8. By definition, however, since the state court issued a temporary restraining order, the state court accepted the

---

[4] Plaintiff contends that his TRO-based claims are independent of his Title VII and ADEA claims, ECF No. 46 at 1-2, but these two claims are the only ones contained in the complaint. If Plaintiff intends to continue to pursue his TRO-related claims, he will have to identify how the facts surrounding those claims constitute a violation of his rights under federal or state law.

witnesses' testimony as true. Thus, there is no way for this Court to adjudicate Plaintiff's TRO claims without also concluding that the state court erred in its evaluation of the evidence before it – which would be a de facto appeal of the state court's ruling. As another court has put it, "the alleged conspiracy is a fig leaf for taking aim at the state court's own alleged errors," Cooper v. Ramos, 704 F.3d 772, 782 (9th Cir. 2012), and therefore the present case is squarely within the parameters of Rooker-Feldman. Plaintiff "cannot escape the reality that his second claim is inextricably intertwined with the state court decision, no matter what label he puts on it. Federal adjudication of this claim would impermissibly 'undercut the state ruling' on the same issues." Id. at 782 (citing Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003)).

Defendant's motion for judgment on the pleadings on this ground is GRANTED. Plaintiff has leave to ground his allegations in a violation of a specific federal or state law, and to plead sufficient facts to show that his claim is not barred by the Rooker-Feldman doctrine.

### 2. Noerr-Pennington

CDCR also claims that the Noerr-Pennington doctrine or California's litigation privilege bars Plaintiff's objection to the TRO proceeding.[5] ECF No. 41 at 8-10. Noerr-Pennington "derives from the Petition Clause of the First Amendment and provides that those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643–644 (9th Cir. 2009) (citation and internal quotations omitted).[6] A similar, though broader, rule applies under the California litigation privilege. See Cal. Civ. Code § 47. Both doctrines seek to protect litigants and participants in judicial proceedings from being held liable for their acts in those proceedings. CDCR has not shown that it is entitled to the protection of either Noerr-Pennington or California

---

[5] Federal Rule of Evidence 501 dictates that federal rules of privilege apply where the underlying action or defense is federal, while state rules apply where state law supplies the underlying action or defense.

[6] The doctrine originally emerged in the antitrust context. See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965).

1  Civil Code § 47. Both privilege doctrines protect litigants and/or participants in an underlying
2  proceeding from being subject to tort liability for their participation in that proceeding. See, e.g.,
3  Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 645 (9th Cir. 2009) (holding that Noerr-
4  Pennington applies to parties who petition the government and their agents). In this case, Plaintiff
5  is not seeking to hold the witnesses in the TRO proceeding liable for any torts based on that
6  proceeding. Rather, Plaintiff is seeking to use testimony in that proceeding as evidence to hold
7  CDCR—which was not a participant or litigant in the TRO proceeding—liable for alleged
8  violations of law that are only tangentially related to the TRO proceeding. CDCR does not hold
9  the litigation privilege here and thus cannot assert it.

CDCR's motion on this ground is DENIED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS CDCR's motion for judgment on the pleadings. The Court also hereby GRANTS Plaintiff leave to amend his complaint to address the deficiencies identified in this Order.

Plaintiff must file any amended complaint within thirty days from the date of this Order. Plaintiff may not bring new causes of action without first obtaining leave of court. If Plaintiff does not file an amended complaint within 30 days, the Court may dismiss his complaint with prejudice.

**IT IS SO ORDERED.**

Dated: September 15, 2014

_____
JON S. TIGAR
United States District Judge